## Maryland Casualty Company v. Ballard County, et al.

(Decided December 17, 1926.)

Appeal from Ballard Circuit Court.

1. Principal and Surety—Surety on Contractor's Bond is Released by Material Change or Nonobservance of Contract Without its Knowledge or Consent.—Surety on bond guaranteeing fulfillment of a contract is released by any material change, alteration, or nonobservance of contract without its knowledge or consent.

2. Principal and Surety—Surety is Discharged by Creditor's Act Altering Liability, Increasing Risk, or Destroying Right to Indemnity.—Surety is bound only by terms of its contract, and is discharged by any act of creditor altering its liability, increasing its risks, or depriving it even momentarily of its right to seek indemnity.

3. Highways—Evidence Held Not to Show that Road Contractor's Delay was Caused by Fiscal Court's Failure to have Grade Stakes Driven so as to Defeat Recovery on Bond.—In county's action on road contractor's bond, evidence held not to show that contractor's

delay of three months in beginning work was brought about partly by fiscal court's failure to have engineer drive grade stakes and lay out work.

4. Highways—Absence of Evidence that Public Roads' Commissioner Believed and Certified to County Fiscal Court that Work was Unnecessarily Delayed Held Not to Defeat Recovery from Surety.— Absence of evidence that commissioner of public roads was of opinion, and certified to county fiscal court, that work on highway was unnecessarily delayed, as required by contractor's bond, to authorize such court to discontinue work, held not to defeat recovery of damages from surety, in view of evidence that latter was acquainted with situation, consented to county taking over work, and was notified that contractor was not performing work according to contract, and that county would cancel contract, unless he speeded up work.

5. Highways—Surety Held Liable for Amount of County's Loan to Road Contractor.—Surety procuring order by county fiscal court for payments to contractor, after loan to contractor by court, by check or draft payable to him and surety, which was done, and issuing checks through its agent in charge of work for labor and materials, held liable for amount of loan.

6. Highways—Fiscal Court May Cancel Road Construction Contract After 10 Days' Written Notice to Contractor, at Any Time Before or After Date for Completion of Work, if Not Prosecuted with Reasonable Diligence.—Under road construction contract providing that, if contractor or his bondsmen failed to take measures insuring satisfactory completion of work within 10 days after written notice by fiscal court that work was unnecessarily delayed, and would not be finished within prescribed time, such court could cancel contract after 10 days' written notice to contractor, at any time before or after date fixed for completion of work, if it was not being prosecuted with reasonable diligence.

7. Highways—Surety, Beseeching County to Let Contractor Continue Work After Date for Completion, and Receiving Money Paid thereon, Cannot Complain of County's Over-Indulgence of Contractor.— Surety, beseeching county to let road contractor continue work after date for completion, and receiving all or part of money paid thereon, under order entered by fiscal court at surety's instigation, cannot complain that county indulged contractor more than it should

8. Highways—Road Contractor's Delay Held Not Justified by County's Failure to Build Culverts, which he Also Contracted to Build.— Road contractor, who also contracted to build culverts, cannot justify delay in completing work under road contract by county's failure to construct culverts.

9. Highways—County Could Recover Cost of Keeping Engineers on Job Longer Than Necessary, for Contractor's Failure to Perform Contract Within Time Limited.—County, obliged to keep engineers on job longer than necessary, had road construction contract been

performed within time limited, could recover cost of such service from contractor.

10. Highways—County Could Recover Liquidated Damages for Each Day of Delay After Date for Completion of Road Work.—County not causing delay in performance of road construction contract could recover liquidated damages for each day of delay after contract date for completion of work.

11. Damages—Agreement to Pay Stipulated Damages for Failure to Perform Contract Will be Enforced.—Courts are favorably inclined towards parties' judgment of damages, and written agreement between parties to contract that failure of one to perform his undertaking shall be adjusted by payment of stipulated damages, which are not unreasonable, will be enforced.

WHEELER & HUGHES and WILLIAM WHITE for appellant.

MILTON ANDERSON and WILLIAM HENDERSON for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The Maryland Casualty Company in 1916 became surety upon the bond of Gene Scamahorn, a highway contractor, whereby it undertook, in the penal sum of $19,530.56, to indemnify the county of Ballard against loss and damage in consequence of the failure of Scamahorn to perform the terms and conditions of a contract by which he undertook to build and construct a certain highway in that county between the towns of Oscar and Barlow according to plans and specifications made a part of the contract. The contract is on a regularly printed form then employed by the state road department, and to it is attached a printed notice to road con- tractors, also instructions to bidders, specifications, methods of construction, and several other pages on related subjects, concluding with a clause reading: "The county court clerk will furnish to prospective bidders, data as to supplies of gravel which will be furnished free of cost at the pit by the county, all other material to be furnished by the contractor," all on the regular forms employed by the state road department. The proposal of Scamahorn, a contractor, is attached to and made a part of the contract. The contract, which bears date of July 21, 1916, provides that the contractor shall begin work within twenty days after the signing of the contract, and complete the work in all parts and requirements on or before June 1, 1917, with the provision that the fiscal

court had the power at its discretion to extend the time
for such completion of the work or to stop the work if
weather conditions were unsuitable for carrying it on.
It also had a subhead under a black letter caption, "FOR-
FEITURE FOR DELAY," which reads:

> "The said contractor hereby agrees, in the event
> of the failure to complete the work within the time
> agreed that the fiscal court of Ballard county may
> deduct and retain from any money which may be-
> come due under this contract the whole cost of engi-
> neering, superintendence and inspection which the
> county and state may suffer by reason of any fail-
> ure to complete the work within the time herein
> specified; provided, however, that said deduction
> shall not exceed the sum of ten ($10.00) dollars for
> each and every day the time employed in complet-
> ing the work exceeds the time herein specified.

> "And it is further agreed that in addition to the
> above that, should said contractor fail to complete
> the work by the date agreed on herein, to-wit, June
> 1, 1917, that the county of Ballard will be damaged;
> but the amount thereof is uncertain and hard to as-
> certain, and it is therefore agreed by the parties to
> this contract that upon such failure of the contractor
> to complete said work by said date, said contractor
> agrees to pay Ballard county, Kentucky, the sum of
> ten (10) dollars per day, which amount to be paid as
> liquidated damages agreed on by the parties hereto
> as the damage done to Ballard county, Kentucky, by
> failure of contractor to complete said work as above
> set out, and which damages are addition to the above
> clause of ten (10) dollars per day as provided for
> herein."

Under the heading, "GENERAL CLAUSES," in the spec-
ification is a paragraph with a subhead "Forfeiture of
Contract," which reads:

> "If at any time the commissioner of public
> roads is of the opinion that the work is unnecessarily
> delayed, and will not be finished within the pre-
> scribed time, and shall so certify in writing to the
> fiscal court, then the said court shall notify the con-
> tractor and his bondsmen, in writing, to that effect.
> And if the said contractor or his bondsmen shall not,

within ten (10) days thereafter, take such measures as will, in the judgment of the commissioner of public roads, insure the satisfactory completion of the work, the fiscal court may then notify the said contractor to discontinue all work under this contract for this improvement; and the said contractor shall immediately respect such notice and discontinue all work or any part thereof as the fiscal court may designate, and the said fiscal court shall thereupon have the right at their discretion, to contract with other parties for the delivery of any material, for the completion of any part of the work; and in case the expense so incurred by the fiscal court is less than the sum which is or would have been payable under the contract, if same had been completed by said contractor, then the said contractor shall be entitled to receive the difference; and in case the expense shall exceed the last named sum, then the contractor shall, on demand, pay the amount of such excess to said county."

Scamahorn failed to complete the work by June 1, 1917, but was permitted by the county and state highway department to continue thereat until the 30th day of October, and the contract at that time was incomplete owing, as it is charged by the county, to want of diligence on the part of Scamahorn in the prosecution of the work. On that date the county gave notice to the contractor, in pursuance to the terms of the contract, to suspend work and to surrender the contract for cancellation, and the county immediately assumed charge of the work and re-let it to another contractor for completion, Scamahorn retiring from the job. In completing the work the county was required to and did expend $5,534.38 more than the original contract provided. In March, 1922, the county filed this action in the Ballard circuit court against Maryland Casualty Company, surety on Scamahorn's bond, to recover $5,534.38, alleged to be the difference between the contract price of Scamahorn and the price at which the county was able to get the work done, and for $1,535.00 as liquidated damages under the contract, a total of $7,064.38. Later the county filed another suit against Scamahorn and the Maryland Casualty Company to recover $3,000.00 loaned in June, 1917, by the county of Ballard to Scamahorn and the casualty company at 4½ per cent interest but which had not been re-

paid. In this latter suit the defendants filed answer and counterclaim and succeeded in recovering on their counterclaim a goodly sum, and the county's petition was dismissed. The casualty company also filed answer and counterclaim in the original action upon the bond by which it claimed that the work would have been completed by the contractor before June 1, 1917, in accordance with the terms of the contract, but for the failure of Ballard county and the fiscal court of Ballard county to keep and perform its part of the contract, in that the county and its fiscal court had failed to locate the road which was to be constructed under the contract and had failed to establish the grade of said road and had failed to drive grade stakes therein, indicating the work to be done, and had failed to construct bridges over sluices, streams and gulleys in accordance with the terms of the contract, and had failed and refused to establish the grade of and for the road, and had changed the location of the road subsequent to the making of the contract, and had thus caused delay and confusion; that the county had failed to furnish the contractor with a profile of the road and had failed to furnish a map showing the excavations, elevations, etc., and had failed to locate the bridges and had failed to complete the culverts and drainways along the road so that the contractor could proceed with his work, and in thus failing to carry out its contract had caused great delay to the contractor, but for which he would have completed the work within the time limited in the contract. Having joined issue, the parties devoted themselves to the taking of a large volume of evidence in support of their several contentions. The case being submitted the trial court adjudged Ballard county and the Ballard county fiscal court recover of the Maryland Casualty Company in the original cause the sum of $5,384.10, with interest from November 1, 1918; and further adjudged that the counterclaim of the casualty company filed in the original action be dismissed. In the second action the petition of the county was dismissed and the contractor and casualty company were allowed to recover on their counterclaim the sum of $3,546.23, with interest, the court summing up the matter, adjudged that Ballard county and the fiscal court recover $3,000.00 for money loaned on June 5, 1917, with interest, and it is, therefore, adjudged by the court that the judgment rendered in favor of the defendants and against the plain-

tiff in the sum of $5,005.62 be credited with the sum of $4,115.19, thereby leaving an amount in favor of the defendants, Maryland Casualty Company and Gene Scamahorn and his surety against the judgment of the county 1925." The court set off the judgment in favor of Scamahorn and his surety against the judgment of the county against the surety company, and from that judgment the surety company appeals.

The surety company contends that a surety on a bond, guaranteeing the fulfillment of a contract, is released if there is any material change or alteration or nonobservance of the contract, made without its knowledge or consent, and this we conceive to be the correct rule, but we do not find it applicable to the facts of this case, for we have not discovered any material change or alteration or nonobservance of the contract on the part of the county in our reading of the record. The casualty company next insists that a surety is only bound by the terms of its contract, and if a creditor does any act, which in the contemplation of law alters the surety company's liability, increases its risk or deprives it even for a moment of its right to seek indemnity, the surety is discharged, and that, too, we conceive to be the law. But we do not find that the county of Ballard or its fiscal court were guilty of any act which in contemplation of law altered the surety's liability or increased its risk or deprived it for a moment of its right to seek indemnity. The contract was let to Scamahorn about the 1st of July, 1916, to be completed by June 1, 1917. The work consisted of some light grading of the highway and the spreading of gravel on the surface, and was not a big job. A careful reading of the evidence convinces us that the contractor was very slow in getting his equipment on the ground after he was awarded the work, and did not begin actual work until October, although he was awarded the contract about the first of July. He insists that this delay was brought about in part by the failure of the fiscal court to have an engineer drive grade stakes and lay out the work; but he is not supported in this by the evidence, although it does appear that the county was unable for a part of the time to get a competent engineer on the job; but it further appears that there was much work at which the contractor might have engaged himself while the stakes were being driven, for Scamahorn himself testified that the gravel pits from which the gravel was to be

taken to surface the road, had to be opened and the burden of earth removed therefrom before the work of taking the gravel could be successfully carried on, but that he failed to engage himself at this work until the gravel was needed and then was delayed by reason of the great task of opening the gravel pits. As we understand the case, there was very little work for an engineer to do, as the grade work was very light. However, there were some slight changes in the location of the road which required the attention of an engineer, and grade stakes were necessary at most places, but the engineers of the county in charge testified that there was never any period of time of consequence from the date of the contract to June 1, 1917, at which there was not sufficient grade stakes upon the right of way to afford the contractor ample space in which to work, and that the contractor was so slow and wanting in diligence in the prosecution of the work that he accomplished very little in 1916, and did not begin work until June or July in 1917, when he should have had the work completed by the first day of June of the latter year. As the whole work amounted to less than $20,000.00, it is easy to understand that a contractor prepared to carry on a grade and drain job and to surface it with gravel, might easily complete such a small undertaking in much less time than that allowed to the contractor in this case if he but diligently prosecuted the work. In fact the work was only about one-half to one-third complete on the first of November, 1917, when it was taken over by the county and re-let to Rudolph, another contractor. The season was then late and but little work could be accomplished that year. However, Rudolph in taking over the contract accomplished almost one-half as much work in the first month after he took over the contract as had Scamahorn in the twelve or fourteen months that he had been pretending to carry on the work. All the evidence tends to show that Scamahorn did not prosecute the work with reasonable diligence and that the county might, under the terms of its contract, have cancelled the contract at almost any time after it let the work to Scamahorn, but the casualty company, which was merely surety, insists that it can only be bound by the strict letter of the bond, and that inasmuch as there is no evidence that the commissioner of public roads was of opinion the work was unnecessarily delayed and had certified that fact in writing to the

fiscal court of Ballard county, the fiscal court was without power to discontinue the work of the contractor and cancel the contract. There is much evidence in the record tending to show that the fiscal court as well as the commissioner of public roads and his agents representing him were constantly insisting upon the contractor completing the work in accordance with the terms of the contract, and that in spite of this the contractor was making very slow and unsatisfactory progress. There is also evidence both of record and otherwise that the casualty company, through its representatives, was present for the purpose of inspecting the work in Ballard county and its representatives were present at the meeting of the fiscal court and were made acquainted with the situation and the unsatisfactory work which Scamahorn, the contractor, was doing, and further, that the county as well as the state highway engineer was not satisfied with the progress of the work; and, indeed, there is some evidence to the effect that the representatives of the casualty company expressed dissatisfaction with the progress of the work and consented that the county take over the work and let the contractor out. There is abundant evidence to the effect that the casualty company was notified in writing and otherwise of the fact that the contractor was not performing the work in accordance with the terms of the contract, and further, that if he did not put on a greater force of men and teams and speed up the work that the county would elect to cancel the contract.

About June 1, 1917, Scamahorn, it seems from the evidence, was so completely exhausted financially that he was unable to proceed with the work and that he and his bondsmen, the casualty company, besought the county to loan him $3,000.00, and this the county did, and that loan is the basis of the second of these consolidated actions.

In making the loan the fiscal court entered an order at the instance of the casualty company, providing that all money thereafter paid to the contractor should be paid by check or draft made payable to Scamahorn and the Maryland Casualty Comuany, the order reading as follows:

"Orders Ballard county fiscal court, regular term, June 5, 1917. This day came Gene Scamahorn and filed with the court a written request for an advancement of three thousand dollars on the Bandana

and Ingleside state aid road 4-D-1 and Barlow and Oscar state aid road 4-A-2, and also filed the written consent and request of his surety, the Maryland Casualty Company to said advancement, which consent was presented by James E. Coleman, agent, and Charles K. Wheeler, attorney for said company, in person; and on motion and second the said written request and consent are both received and of record and said request is granted and warrant is hereby ordered drawn on the state aid fund for said amount of three thousand dollars, payable to Gene Scamahorn and James E. Coleman, agent of the Maryland Casualty Company, and said advancement is to draw interest at the rate of four and one-half per cent per annum from this date until paid, and is to be a charge or advance against the work done or to be done on the two above mentioned roads, and all further payments made by this court on said two roads are to be made to Gene Scamahorn and James E. Colman, agent of the Maryland Casualty Company, until said roads are completed and accepted. Signed J. S. Moore, judge Ballard county court.''

With the record is filed a copy of the three thousand dollar voucher by which the $3,000.00 was loaned to Scamahorn and the casualty company and it reads:

"State of Kentucky,        Ballard county court,
No. 3488                    June 5, term, 1917.

"It is ordered by the court that Gene Scamahorn & Jas. E. Colman, agt. for Maryland Casualty Co., be and is allowed the sum of three thousand & no/100 dollars out of the state aid road fund of Ballard county.
For advance                    Dec. 13, Paid
on Barlow-Oscar & Bandana Ingleside Road.
$3,000.00            Signed, S. J. Moore, J. B. C. C.
Endorsed across the back:

"Gene Scamahorn
James E. Colman, agent,
Maryland Casualty Company."

Endorsed across the back:

"Frank Owens, clerk,
April 13, 1925.   Ex."

Thereafter all checks and vouchers issued in payment of work on the contract which Scamahorn undertook were made payable to Scamahorn and the casualty company or its agents, thus showing beyond question that the casualty company was in full touch with the situation and was advised of all the conditions prevailing in the work of carrying out the contract, and it is shown that the casualty company, through its agents, having special charge of this work issued checks in satisfaction of the labor and materials employed on the job, and this was going on at the time the work was taken over by the county and Scamahorn allowed to withdraw.

Clearly the county of Ballard and its fiscal court had a right, under the terms of the contract copied above, to cancel the contract after ten days' written notice to the contractor if he failed to exercise reasonable diligence in the prosecution of the work, and this it might have done before June 1st, 1917, or at any time thereafter if the work was not being prosecuted with reasonable diligence. The county indulged the contractor perhaps more than it should, but the surety, under the facts of this case, is in no position to complain of this, and inasmuch as it besought the county to let the contractor continue the work and actually went into partnership with the contractor, receiving in whole or in part the money paid upon the work.

The trial court found, we think upon sufficient evidence, that the contractor was not unduly delayed by the county or the fiscal court in failing to drive grade stakes, laying out the road, building the culverts, or doing any of the things which the county was obliged under the contract to do. As illustrative of this, we learn from the evidence of Scamahorn that his claim that he was delayed by the failure of the county to build the culverts, is absolutely groundless because Scamahorn himself and his associates, in addition to having the contract to build the highway, had entered into a contract with the county to build the culverts on the same road, and it was his and their duty to have the culverts ready for the work on the highway. His complaint, therefore, of the failure of the county to construct the culverts is a complaint of himself and is no justification of his failure to comply with his second contract by which he undertook to build and construct the culverts.

The county and the fiscal court sought by this action only to recover the difference between the price at which Scamahorn undertook to do the work and the price which it was obliged to pay for the work after Scamahorn had failed to perform the terms of his contract guaranteed by the bond of the casualty company, and to recover the liquidated damages provided by the contract. The county and state, through Scamahorn's want of diligence, were obliged to keep engineers on the job for a greater length of time than it would have been necessary had the contract been carried out within the time limited, and it was entitled to recover of the contractor the cost of this service, but it did not seek to do so and the judgment does not include any part of this extra expense. It did seek to recover the liquidated damages, $10.00 per day, provided for in the contract, and on this item recovered something more than $1,500.00, and if the county and the fiscal court were not guilty of the thing which brought about the delay of which the casualty company complains, the county was as much entitled to recover the liquidated damages of $10.00 per day for each day which the completion of the work was delayed after the date fixed in the contract for its completion as for any other part of the contract, and the court so adjudged. Courts are favorably inclined towards the adjustment of damages by the parties, and when they enter into a solemn written obligation by which they agree that the failure of a party to the contract to perform his undertaking shall be adjusted by the payment of certain stipulated damages which are not unreasonable, the courts will enforce the same. The finding and decree of the chancellor, to whom all questions, including that of damages, were referred, seems equitable and just and we find no reason for disturbing it, hence it is affirmed.

Judgment affirmed.