## Southern Exchange Bank v. American Surety Co. of New York.

Oct. 1, 1940.

William B. Ardery, Judge.

252

Marion W. Moore for appellant.

J. H. Gold and Leslie W. Morris for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

This is a contest between the Southern Exchange Bank and the American Surety Company of New York over a fund deposited in court by the State Highway Commission as the balance due the Ace Construction Company on a contract for the building of a road in Kenton County.

The appellee was the surety on the bond to insure the proper and faithful performance of the contract including the payment of materialmen and laborers. It claims that the construction company by an instrument executed to it at the time assigned all its right, title and interest in the sums payable under the contract, and expressly agreed that in the event of a breach or default the surety should be subrogated to the rights of the principal, including deferred and reserved payments or any

money due it in order to indemnify and save the surety from loss. Upon that instrument the surety asserts a prior and superior lien to secure itself in the sum of $6,365.11 which it was compelled to pay because of the default of the principal.

During the course of the road work the bank loaned money to the Ace Construction Company for payment of laborers and materialmen under a verbal agreement that the notes would be paid out of the contract price. The bank claims that by subrogation it has a prior and superior lien upon the fund to satisfy its unpaid demand of $2,100 and interest. It acquired an attachment lien on the money in the hands of the state at the commencement of the action. Judgment was rendered in favor of the surety company, and the bank appeals.

The arguments as to which party has a superior right to the fund present several different aspects of the legal problem. It seems sufficient to confine our consideration to the concrete situation of the contending parties as presented by the pleadings. The surety company asserts the rights of its principal and a lien upon the bases of assignment and subrogation of the contractor. The bank asserts a right and lien by subrogation to the rights of the laborers and materialmen who were paid by its money. We may ignore its attachment of the fund.

If this were a contest between the surety and the principal or the surety and general creditors who acquired only an attachment lien the appellee's position would be well taken. Illinois Surety Company v. Mitchell, 177 Ky. 367, 197 S. W. 844, L. R. A. 1918A, 931; National Surety Corporation v. First National Bank, 278 Ky. 273, 128 S. W. (2d) 766. If it be conceded that the surety's lien related back to the time of the original contract, as it contends, the concession would have to be qualified by the conception that it was intended by all parties to be subordinate to the rights of those who would deal with or work for the contractor. The contract with the State Highway Commission expressly provided that the bond executed by the contractor and his surety was for the benefit of "each and every person who shall furnish labor or materials for use in the construction of said project," and the bond itself guarantees and binds both the principal and surety to pay

the claims arising therefrom. Blair & Franse Construction Company v. Allen, 251 Ky. 366, 65 S. W. (2d) 78. The assignment of the contractor's rights in his contract was subject to all the terms and conditions and the performance thereof and its liabilities and obligations thereunder. Movl Construction Company v. Covington Trust & Banking Company, 258 Ky. 485, 80 S. W. (2d) 560.

As to the position of the bank. Not only does the obligation of the contractor and surety extend to the payment of mechanics and materialmen, but the statute gave them a lien on the money owing the contractor by the State. Section 2463 et seq., Kentucky Statutes; Steele & Lebby v. Flynn-Sullivan Company, 245 Ky. 772, 54 S. W. (2d) 325. The money loaned by the bank to the contractor was for the purpose of paying and was actually used to pay laborers and a small amount due materialmen. Though it was proposed to execute a writing in the nature of an assignment of a sufficient amount of the contract price to secure the notes given the bank, that was not done as the oral agreement was felt by the parties to be enough. The absence of a writing or formal assignment is not material for subrogation is a consequence which equity attaches to any condition where the dictates of natural justice and good conscience call for it. The right arises out of and from the transaction itself. Ft. Jefferson Improvement Company v. Dupoyster, 112 Ky. 792, 66 S. W. 1048, 24 Ky. Law Rep. 1199, 2 L. R. A., N. S., 263; Commonwealth v. Federal Land Bank, 226 Ky. 628, 11 S. W. (2d) 698; 26 R. C. L., 1316, 1320. The doctrine is applied where money is advanced to pay a debt under an agreement with the debtor or with the creditor, either express or implied, that he shall be subrogated to the rights of the creditor. Commissioners of Sewerage v. Gates, 159 Ky. 391, 167 S. W. 417; Illinois Surety Company v. Mitchell, supra; Louisville Joint Stock Land Bank v. Bank of Pembroke, 225 Ky. 375, 9 S. W. (2d) 113. Since the money was loaned the Ace Construction Company, the debtor, at its request for the express purpose of paying its workmen and materialmen whom it owed and who had a lien on the fund owing the contractor and, as well, the right to look to the surety for payment, the bank cannot be deemed a volunteer or intermeddler, as appellee contends.

In Movl Construction Company v. Covington Trust & Banking Company, supra, the F. W. Graham Company, the general contractor in the building of two railroad underpasses, executed a bond with surety to the railroad company similar in terms to that of the Ace Construction Company and the American Surety Company here. The contractor likewise bound itself to the surety by an agreement of indemnity and made an assignment of all funds to become due in order to save the surety harmless. During the course of the work the contractor borrowed money from a bank with which to meet its payroll and executed a formal assignment of funds owing by the railroad company to secure repayment. A subcontractor, the Movl Construction Company, asserted a lien for money due it by the contractor and claimed priority of right. In the beginning it had given the general contractor's surety a bond indemnifying it against loss as surety on the bond of the general contractor, F. W. Graham Company. The development of the situation was that if the bank had not furnished the money with which to pay the laborers and materialmen the surety would have had to supply the deficit, and under its commitments to the surety the Movl Construction Company would have ultimately borne the loss. We held that a court of equity in the consideration of right and justice would imply an agreement that the bank should be subrogated to the rights and remedies of the laborers and materialmen whose claims it paid, and that the bank was entitled to the fund owing by the railroad company to the general contractor. The case at bar seems to be a clearer one for the application of that doctrine. The contest here is directly between the bank who furnished the money and the surety who would have had to supply it had the bank not done so. As we have stated, the surety claims only under its preassignment by the contractor and the right to be subrogated to its principal, the contractor—not to those materialmen whose bills it paid directly. The operation of a good conscience and the administration of natural justice—the doctrine of subrogation—places the bank in the place of the laborers and materialmen. When so placed it is apparent that the surety's claim cannot prevail over claims which it guaranteed would be paid by its principal or itself. We are of opinion, therefore, that the chancellor should have adjudged the appellant entitled to priority and the recovery

sought by it. See, also, Commissioners of Sewerage v. Gates, supra; Young Men's Christian Association's Assignee v. Indemnity Insurance Company, 244 Ky. 473, 51 S. W. (2d) 463.

The appellee contends that in any event the judgment must be affirmed because the bank loaned its money to Frank deSalvo and Joseph deSalvo as partners doing business under the firm name of Ace Construction Company, and sued them as such. The highway construction contract and bond were executed, as therein disclosed, by the Ace Construction Company, a corporation. The bank's suit was against a partnership, and the two individuals composing it were brought before the court by warning order. The appellee in its intervening petition denied the allegations of the bank that Frank deSalvo and Joseph deSalvo, doing business under the firm name of Ace Construction Company, or in any manner, had executed the notes it had sued on, and denied that the State Highway Commission owed such partnership anything. It alleged that the Ace Construction Company was a corporation, and brought it before the court on its intervening petition by a warning order. The bank joined issue on the allegations as to the incorporation of the common defendant. It was established by the evidence that the Ace Construction Company was an Ohio corporation and had executed the road contract and bond as a corporation. It had been incorporated by Joseph deSalvo, Frank deSalvo and a third person. It appears that no attention was given the status or character of the company when the bank loaned the money. The notes were signed "The Ace Construction Company by Frank deSalvo, Sec. & Treas." After the money had been loaned and during the progress of the work, the articles of incorporation were cancelled by the State of Ohio "upon certificates of the Tax Commission filed November 16, 1936." No notice was then taken of this by any one concerned here. Probably neither party to this appeal knew of it for some time thereafter.

Section 8623-80 of the Ohio Statutes is as follows: "Any corporation which shall be dissolved and any corporation whose articles have been cancelled shall cease to carry on its business and shall be without authority so to do, but it shall continue for the sole purpose of paying, satisfying and discharging any

existing liabilities and obligations, collecting and distributing its assets and doing all other acts required to adjust, settle and wind up its business and affairs, and it may do all such acts and may sue and be sued in its corporate name.''

This is more specific than our statute of like purpose—Section 561, Kentucky Statutes—which merely provides that when the life of any corporation expires ''it may thereafter continue to act for the purpose of closing up its business, but for no other purpose.'' It is clear that the Ace Construction Company continued as a corporation for the purpose of completing the road contract and until all of its affairs in connection therewith were fully settled. It could have been and should have been sued by the bank as a corporation regardless of the law of the state in which it was incorporated and by which it was dissolved. Castle's Adm'r v. Acrogen Coal Company, 145 Ky. 591, 140 S. W. 1034. Though the money involved belonged to the construction company, subject to the rights of the claimants, neither the deSalvos as partners nor the corporation raised the question of defect of parties. They let the case go by default and left the claimants to fight it out between themselves. Only the partners or the corporation could have complained that they or it had not been properly served with process on the petition or the intervening petition of these parties, respectively. Hollowell v. Joe K. Exall & Co., 173 Ky. 422, 191 S. W. 123. Moreover, the surety company and the bank agreed upon an order which recited that all of the parties were properly before the court. If this did not waive the question now raised the agreement or concession cannot be overlooked in adjudging the rights of the respective parties and bringing an end to the litigation.

The judgment is reversed.

Whole court sitting, except Judge **Perry.**