Bess **YORK** et al., Appellants,

v.

**CLINE CONSTRUCTION COMPANY, Inc.,** et al., Appellees.

Court of Appeals of Kentucky.

June 3, 1960.

O. T. Hinton, F. Dale Burke, Pikeville, for appellants.

Oldham Clarke, McElwain, Dinning, Clarke & Winstead, Louisville, Ky., Edward R. Hays, Baird & Hays, Pikesville, Ky., for appellee and cross-appellant, U. S. Fidelity & Guaranty Co.

CULLEN, Commissioner.

Bess York and Gypsy York Johnson loaned money to one Robert Johnson, a partner in the Cline Construction Company, which at the time was engaged in work on six highway construction projects under contracts with the Kentucky Department of Highways. Some of the money was used to pay for labor, materials and supplies on two projects on which the United States Fidelity and Guaranty Company was surety on the contractor's performance bonds. Among other things, the bonds were conditioned that the contractor "shall promptly and fully pay each and every person supplying labor, materials, and supplies in the prosecution of the work." The Cline Construction Company went bankrupt and was unable to meet its obligations under the contracts. Miss York and Mrs. Johnson thereupon brought this action against U. S. F. & G. to recover so much of the money loaned by them as had been applied in payment for labor, materials and supplies on the two projects on which U. S. F. & G. was the surety. Judgment

was entered awarding recovery of $3,086.11. Miss York and Mrs. Johnson have appealed, maintaining that they should have been awarded $11,166.25. U. S. F. & G. has cross-appealed, contending that there should be no recovery at all.

The appellants base their claim upon the doctrine of equitable subrogation. Since the application of this doctrine depends upon the facts of the particular case we shall state the facts of this case.

When the construction contracts were entered into with the Department of Highways the Cline Construction Company consisted only of Don Cline doing business as a sole trader. Subsequently Robert Johnson, son of Gypsy York Johnson and nephew of Bess York, went into partnership with Don Cline and the partnership undertook to carry out the six construction projects, two of which were bonded by U. S. F. & G. and others of which were bonded by the Maryland Casualty Company.

The partnership quickly ran into financial difficulties and over a period of several months Mrs. Johnson and Miss York advanced some $60,000. However, the particular claim in this case arises out of only two of the advancements, one for $12,000 and the other for $10,000. Each of these advancements was made in the following manner: Mrs. Johnson executed a note payable to Miss York and Robert Johnson; they endorsed the note and discounted it at the First National Bank of Pikeville; part of the proceeds were deposited in the account of the Cline Construction Company and part in the account of Robert Johnson; however, subsequently the part deposited in Johnson's account was transferred to the Cline Construction Company's account. Checks were drawn upon the latter account to pay for labor, materials and supplies on the various construction projects, and there was evidence that perhaps as much as $11,000 (out of the total advancements of $22,000) of these payments were attributable to the two projects on which U. S. F. & G. was surety.

Robert Johnson died before trial of the action so his testimony was not available. Mrs. Johnson and Miss York, in their testimony, indicated that their dealings with Robert Johnson were based upon affection and close family ties rather than upon the cold realities of the business world. When asked why she executed the $10,000 note Mrs. Johnson said: "Robert was in this construction business, and he thought he could make money, and I gave him the opportunity." As to the purpose of the $12,000 note she said: "To be used for this construction work. * * * It was used on this work." She did not know how many contracts Robert had. She never had any business transactions with Don Cline personally, and she didn't know just when her son became connected with Cline. However, she knew that Cline was associated with Robert when she executed the notes. Miss York, when asked as to the purpose of the $12,000 note, said: "Well, it was for Robert in this construction business, and Don Cline. He wanted the money to work on." She thought they had highway contracts. The money was "for construction." The purpose of the $10,000 note was "for the same thing." She knew the money from both notes was to be "paid on the work * * * the road contracts." The notes were given "to help in the construction business." She didn't know what or how many projects the Cline Construction Company was working on. "He just told me he needed it for Cline Construction Company is all I know." She knew that Robert bought a lot of expensive road equipment.

■ There were introduced in evidence two letters addressed to the First National Bank of Pikeville and signed in the name of the Cline Construction Company by Robert Johnson. The first referred to the $12,000 note and stated that Mrs. Johnson had agreed to loan this money to Cline Construction Company "for payment of payroll and materials to complete the contracts we now have under construction." The second referred to the $10,000 note

and stated that Mrs. Johnson had agreed to loan to Cline Construction Company "the necessary funds to complete the contracts we now have under construction." It will be observed that neither of these letters identified the loans as being for any particular one or more of the six projects the construction company was working on. Also, while the letters stated that the money was being borrowed "to pay payroll, material and supplies," it will be remembered that Miss York and Mrs. Johnson in their testimony did not say that the loans were for that specific purpose, so the letters may be considered to express only Robert Johnson's purpose in borrowing the money rather than an express agreement that the money was to be used specifically for labor, materials and supplies.

The situation is, then, that Mrs. Johnson and Miss York advanced money through an indirect procedure to Robert Johnson for general use of the Cline Construction Company in carrying out six highway construction contracts. The question is whether these facts establish a right of equitable subrogation against the surety on the performance bond for two of the projects, for recovery of such of the advanced money as actually was used to pay for labor, materials and supplies on those two projects.

In Movl Construction Co. v. Covington Trust & Banking Co., 258 Ky. 485, 80 S.W. 2d 560, a bank which had made a direct loan to a contractor (who was building an underpass for a railroad) for the purpose of paying laborers and materialmen on the project was held to be entitled to subrogation to the claims of the laborers and materialmen that had been paid with the proceeds of the loan, and therefore entitled to priority over the contractor's surety to the money remaining due from the railroad. A similar decision was reached in Southern Exchange Bank v. American Surety Co., 284 Ky. 251, 144 S.W.2d 203, where a bank which had loaned money to a highway contractor for the express purpose of paying workmen and materialmen on a specific project was awarded priority over the contractor's surety to the balance due the contractor from the State Highway Commission, under the doctrine of equitable subrogation.

In Western Casualty & Surety Co. v. Meyer, 301 Ky. 487, 192 S.W.2d 388, 164 A.L.R. 769, the wife of a contractor loaned him money for the express purpose of paying a particular debt for materials and supplies. The loan was made "through the partial procurement or the equivalent acquiescence of the agent of the (contractor's) surety, accompanied by express assurances of protection under the bond." 192 S.W.2d 390. It was held that under the doctrine of equitable subrogation the wife could recover the amount loaned by her from the surety on the contractor's performance bond.

The Movl and Southern Exchange Bank cases are contrary to the overwhelming weight of authority. See 40 C.J.S. Highways § 210, p. 167; 43 Am.Jur., Public Works and Contracts, Sec. 191, p. 931; Annotations, 127 A.L.R. 974, 164 A.L.R. 782.

The Western Casualty case is distinguished on the ground of knowledge, consent and even active encouragement of the loan by the surety. See Annotations, 127 A.L.R. 974, at page 987; 164 A.L.R. 782, at page 786.

While we are not disposed to overrule the Movl and Southern Exchange Bank cases, we feel that since their doctrine has been repudiated almost universally in other jurisdictions it should be strictly limited in its application. In those cases there was a direct loan to the contractor, for the specific purpose of paying for labor, materials and supplies on a particular project. In the instant case the loan was not made directly to the contractor, but reached his hands through a circuitous route; the loan was not made for the specific purpose of paying laborers and materialmen, but as far as the lenders were concerned could have been used to buy equipment;

and the loan was not for a particular job, but for a total of six different jobs.

Even in circumstances such as those in the Movl and Southern Exchange Bank cases the right to equitable subrogation hangs by a most tenuous thread. Under the facts of the instant case the thread is so feeble as to furnish no support at all. As said by Anderson, J., in his concurring opinion in Audrain County, etc. v. Walker, 236 Mo.App. 627, 155 S.W.2d 251, at page 265, the doctrine of equitable subrogation "cannot be used as a universal remedy for parties who have lost their money."

It is our opinion that the appellants were not entitled to any recovery from the surety company.

In accordance with the cross-appeal the judgment is reversed with directions to enter judgment dismissing the claim against the surety company. On the direct appeal the judgment is affirmed.