**COMMERCIAL STANDARD INS. CO.**
v.
**AMERICAN EMPLOYERS INS. CO.**
No. 11797.

United States Court of Appeals
Sixth Circuit.
Jan. 6, 1954.

Raymond C. Stephenson, Louisville, Ky., Raymond C. Stephenson, Charles M. Allen, Louisville, Ky., on brief, for appellant.

J. W. Clements, Louisville, Ky., J. Walter Clements, Curtis & Curtis, Louisville, Ky., on brief, for appellee.

Before SIMONS, Chief Judge, and McALLISTER and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

This is a contest between two insurance companies which insured an individual against the same risk. Appellant company paid the entire loss arising therefrom, and seeks contribution from the other insurance company. The District Court held that appellant and appellee were co-insurers; that, by the terms of their policies, each became liable to the insured for that proportion of the total loss which its insurance bore to the total amount of insurance; that appellant company, in paying the insured more than that share for which it was liable—that is, the share for which appellee company was liable—became a volunteer; and that it was, therefore, not entitled to contribution.

The facts out of which the controversy arises are as follows: A. L. Dodd, doing business as Dodd Trucking Service, at Bowling Green, Kentucky, was insured by three policies of insurance; one, issued by appellant, Commercial Standard Insurance Company; and two other policies, issued by appellee, American Employers Insurance Company, to another party, who later assigned them to Dodd, the assignment having been consented to by the insurance company.

The policy issued by appellant, Commercial Standard Insurance Company, provided that it would pay, on behalf of the insured, all sums which he should be obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury sustained by any person, caused by accident, and arising out of the ownership, maintenance, or use of the insured's automobile.[1]

[1] The policy provision reads, as follows: "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at

One of the policies issued by appellee, American Employers Insurance Company, provided that it would pay, on behalf of the insured, all sums which he might be obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury, caused by accident, and arising out of the ownership or use of the insured's premises, and all operations which were necessary or incidental thereto.[2]

The other policy issued by the American Employers Insurance Company provided that it would pay, on behalf of the insured, all sums which he should be obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury sustained by any person, caused by accident, and arising out of the ownership, maintenance, occupation, or use of the premises for the purpose of an automobile storage garage or service station, and all operations, either on the premises or elsewhere, which were necessary and incidental thereto; and the use of any automobile for any purpose in connection with such operations.[3]

All three of these policies were in force on May 8, 1944. On that day, Fred Ramey went to the automobile service station, mentioned in the policies, which was being operated by Dodd, to consult with him about the purchase of a partnership interest in the business. During the course of their discussions and negotiations, a mechanic employed by Dodd was engaged in removing tires from the wheels of a truck for the purpose of changing them from wheel to wheel in order to provide for uniform wear of the tire treads. Dodd asked Ramey whether he thought one of the tires which was being removed was worth retreading. As Ramey stooped over to examine the tire, the mechanic pounded with his hammer on the metal rim of the tire and loosened a steel ring which, because of the air pressure in the tire being suddenly forced against it, flew off and struck Ramey in the head, fracturing his skull. Later, Ramey sued Dodd in the Warren County Circuit Court in Kentucky, and eventually secured a judgment in the amount

any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile, including the loading and unloading thereof."

2. The policy provision, in so far as here pertinent, reads as follows: "To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom sustained by any person or persons, caused by accident and arising out of the hazards hereinafter defined. * * *

"Definition of Hazards

"Division 1. Premises—Operations

"The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto."

3. The policy provision, in so far as here pertinent, provides as follows:

"1. Coverage A. Bodily Injury Liability.

"To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of such of the operations hereinafter defined as are indicated by specific premium charge or charges in Item 3 of the declarations.

* * * * *

"Definition of Operations

"Division 2. Automobile Storage Garage or Service Station.

"The ownership, maintenance, occupation or use of the premises herein designated, including the public ways immediately adjoining, for the purpose of an automobile storage garage or service station, and all operations either on the premises or elsewhere which are necessary and incidental thereto, including ordinary repairs of buildings on the premises and the mechanical equipment thereof; and the use of any automobile for any purpose in connection with the above defined operations."

of $5,000, which was affirmed by the Kentucky Court of Appeals.

At the time that Ramey's suit was commenced against him, Dodd reported that fact to Mr. Taylor, the insurance agent at Bowling Green who represented both insurance companies in this case, and who had caused all three of the above mentioned policies to be issued to Dodd. Taylor notified both insurance companies of the suit. Appellee, American Employers Insurance Company, refused to defend or take any responsibility for the defense of the suit. Appellant, Commercial Standard Insurance Company, defended the suit by virtue of its policy of insurance with Dodd. After the judgment against Dodd was affirmed by the court of last resort in Kentucky, appellant, on behalf of Dodd, paid the judgment rendered against him, with interest and costs.

The first contention advanced on this appeal by the Commercial Standard Insurance Company is that the liability of American Employers Insurance Company was primary; that Commercial's liability was secondary; and that, therefore, appellant was entitled to be subrogated to Dodd's right against his primary insurer and to have the entire judgment and costs paid by appellee, American Employers Insurance Company, by virtue of its liability as such primary insurer.

Commercial's policy insured Dodd against liability for accidental injuries arising out of the maintenance of Dodd's truck. The term, maintenance, covered the changing of the tires to prevent undue wear.

The two policies of American Employers insured Dodd against liability for accidental injuries arising out of the use of the service station premises and all operations incidental to the use of such premises. These policies covered the liability for Ramey's injuries which resulted from the operations incidental to the use of the service station.

██ All of the above policies covered the loss in this case, although they were phrased in different language and approached the subject of the liability from a different aspect. If Commercial's policy had not been in existence, American Employers would have been liable for the entire loss; and if the latter's policies had not been in existence, Commercial Standard would have been so liable. In such a case, misty indeed are the contours that may be perceived between primary and secondary liability. In any event, here, one circumstance obviates the necessity of considering such questions and determines the issue: all of the policies of both companies provided that if the insured had "other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all * * * insurance against such loss." Where the loss of an insured is covered by several policies in different insurance companies, it is unimportant whether the coverage is specific in one policy and general in another, if the policies contain pro rata clauses providing that the liability under each policy shall be only that proportion of the total loss which the policy bears to the total amount of the policy. In such a case, unless there are other provisions in the policies otherwise specifically limiting or conditioning liability thereunder, the insurance companies are bound by what they have expressly covenanted in their policies as to their liability. In these circumstances, the insurance of none is primary or secondary; the liability is concurrent, and should be pro rated among them. The foregoing rule, which was laid down by Judge Freed in Ranallo v. Hinman Bros. Const. Co., D.C., 49 F.Supp. 920, was affirmed by this court on appeal, sub nom. Buckeye Union Casualty Co. v. Ranallo, 6 Cir., 135 F.2d 921, and is here controlling. Appellant and appellee were, therefore, co-insurers; and, in this determination, we concur with the conclusion of the District Court.

We come, then, to appellee's contention that, although both companies were co-insurers, each was liable only for a pro rata amount of the total loss by virtue of their policy contracts with the insured; that the liability of the insurance companies was several, and not joint; that neither insurer had any interest in the liability of the other insurance company, except in ascertaining the total amount of insurance, in order to fix its pro rata share of the loss based upon such total outstanding insurance; that, since each insurance company was only liable for its pro rata share, it was not legally bound to pay more than its proportion, and was not liable for the share of its co-insurer; that in any claim against it by the insured, appellant Commercial Standard Insurance Company could have paid its pro rata share of the loss and relied upon the pro rata clause in its policy; that in any action against it by the insured on its policy, appellant could have joined American Employers as a party for determination of its pro rata share; that payment to the insured by Commercial Standard of the entire loss was a payment not only of its share of the loss, but also of the share of the loss for which American Employers was liable; and that, in paying such share of American Employers, appellant was a volunteer, and, therefore, not entitled to recover the amount which it paid, above its pro rata share, to the insured, under the authority of American Casualty Co. v. Maryland Casualty Co., D.C.Pa., 20 F.Supp. 561; Farm Bureau Mutual Automobile Ins. Co. v. Buckeye Union Casualty Co., 147 Ohio St. 79, 67 N.E.2d 906; Traders & General Ins. Co. v. Hicks Rubber Co., 140 Tex. 586, 169 S.W.2d 142; Fidelity & Casualty Co. of New York v. Firemen's Fund Indemnity Co., 38 Cal.App.2d 1, 100 P.2d 364.

Much is said in the briefs and in the authorities cited therein about the effect of a voluntary payment on the right to subrogation; and it is emphasized that a payment by a volunteer, as that term may be construed, will not support subrogation.

In considering this subject, it is to be borne in mind that there are two kinds of subrogation—(1) legal, or, as often denominated, equitable; and (2) conventional. Legal or equitable subrogation arises by operation of law; conventional subrogation, by contract or agreement. It may be said that usually when the term, "subrogation," is used alone, legal or equitable subrogation is meant, rather than conventional subrogation. In equity, a court may give restitution to a plaintiff to prevent the unjust enrichment of the defendant, where the plaintiff has used his property in discharging an obligation owed by the defendant, by creating in the plaintiff rights similar to those which the obligee had before the obligation was discharged. But one who officiously, or, as generally expressed, who, as a volunteer, discharges an obligation owed by another, is not entitled to equitable subrogation. See Restatement of the Law of Restitution, Section 162. What a volunteer is in the legal sense, therefore, becomes of importance in the application of the doctrine of legal or equitable subrogation. If a person has any palpable interest which will be protected by the extinguishment of the debt, he may pay the debt and be entitled to hold and enforce it just as the creditor could. Katschor v. Ley, 153 Kan. 569, 113 P.2d 127. Payment of the debt of another under a moral obligation will support equitable subrogation; and the remedy will be applied in all cases where demanded by the dictates of equity, good conscience, and public policy. Federal Land Bank v. Marvin, 228 Ky. 242, 245, 14 S.W.2d 762, 70 A.L.R. 1392.

Both companies, then, were liable for the loss in question under their policies with the insured. While appellee refused to enter upon the defense of the damage suit, or to pay anything on the judgment, or any of the costs of defense, appellant defended the case through two trials and two appeals, and

finally paid the judgment against the insured. It is now admitted by appellee that its policies covered the risk and that it would have been liable to pay its share of the judgment if appellant had not paid the entire judgment. But it now refuses any payment to appellant on the ground that, since appellee was not forced by legal action to pay its admitted share, appellant has no right to be reimbursed by it, since it was a volunteer in making the payment.

Whether appellant would be entitled to legal, or equitable subrogation suggests many interesting questions. Did it have a palpable interest to protect in paying the judgment as insurer? Were there dictates of equity and public policy justifying subrogation because of the payment? Whatever conclusions might be arrived at as to these considerations and their application to the problem presented by this controversy, we find it unnecessary to determine the question whether appellant would be entitled to legal, or equitable, subrogation.

In the instant case, we are not concerned with legal or equitable subrogation, but with conventional subrogation, which arises from the express insurance contract entered into between the insured, Dodd, and appellant insurer, Commercial Standard Insurance Company. Conventional subrogation, as has been said, is based upon contract—in this case, upon a written contract. On the other hand, legal, or equitable subrogation is based upon the equities of the parties and arises by operation of law where one having a liability or a right or a fiduciary relation in the premises pays a debt owing by another under such circumstances that he is, in equity, entitled to the security or the obligation held by the creditor whom he has paid. See Restatement of the Law of Restitution, Section 162.

██ One is not a volunteer, so as to be denied subrogation, who advances money to another for the payment of claims, with an express or implied agreement of either the debtor or creditor, that he shall acquire, or be subrogated to, the rights which the person paid had under a bond or other contract; and this is so even though the surety or secondary obligor made no request of him or had no notice of his advancing the money. Southern Exchange Bank v. American Surety Co. of New York, 284 Ky. 251, 144 S.W.2d 203; Western Casualty & Surety Co. v. Meyer, 301 Ky. 487, 192 S.W.2d 388, 164 A.L.R. 769; and one, likewise, who pays the debt of another pursuant to an agreement, express or implied, for subrogation, is not a volunteer, and is entitled to subrogation to the creditor's rights. Movl Const. Co. v. Covington Trust & Banking Co., 258 Ky. 485, 80 S.W. 560; Federal Deposit Ins. Corp. v. American Surety Co. of New York, D.C.Ky., 39 F.Supp. 551. As stated in 50 Am.Jur. 697, "The rule that payments by volunteers will not support subrogation does not apply to conventional subrogation. One having no interest in or relation to the matter may be entitled to subrogation where he pays the debt of another upon agreement that he shall be entitled to the rights and securities of the creditor so paid." See Smith v. Sprague, 244 Mich. 577, 222 N.W. 207.

██ The doctrine of subrogation is applied where money is advanced to pay a debt under an agreement with the debtor or with the creditor, either express or implied, that he shall be subrogated to the rights of the creditor. Southern Exchange Bank v. American Surety Co. of New York, 284 Ky. 251, 254, 144 S.W.2d 203. In conventional subrogation, the extent of the right is measured by the agreement for subrogation; equity will determine the rights of the parties by the contract, enforce the agreement, and give the second or substituted creditor what he contracted for. Federal Deposit Ins. Corp. v. Wilhoit, 297 Ky. 339, 180 S.W.2d 72.

In United States Guarantee Co. v. Liberty Mutual Ins. Co., 244 Wis. 317, 12 N.W.2d 59, 150 A.L.R. 632, an insurance company paid the entire amount of a

claim which was also covered by an insurance policy in another company, and, in so doing, paid in excess of the amount for which it would have been liable, because of the other insurance. It was held that the insurance company paying the entire claim was entitled to be subrogated to the rights of the insured against the other company by virtue of the agreement, contained in its insurance policy, for subrogation to the rights of the insured. To the same effect is the recent decision of Detroit Automobile Inter-Insurance Exchange v. Detroit Mutual Automobile Ins. Co., 337 Mich. 50, 59 N.W.2d 80. While the foregoing cases referred to the wrongful conduct of the insurance company which refused to perform its obligations under its policy, and discussed the rule that payments made to protect an interest, or because of a moral obligation, were not voluntary payments—apparently directed to the subject of equitable subrogation—the decisions of those courts were based upon the express contract for subrogation, and are authority for the rule that one who pays the debt of another pursuant to an agreement for subrogation, is entitled to the remedy of subrogation. Whether the payment of the debt of another is for the purpose of protecting an interest of the one who pays the debt; whether it is paid because of a moral obligation; whether it is a payment by a volunteer— all of these considerations are irrelevant in a case of conventional subrogation. All of the contentions of appellee American Employers Insurance Company on the subject of subrogation in its arguments and brief in which it cites numerous authorities, are addressed to the proposition that appellant is not entitled to legal or equitable subrogation. None of the arguments or authorities cited bears upon conventional subrogation or upon appellant's rights thereto.

■ In this case, the evidence establishes appellant's right to conventional subrogation. There is no mere implication or uncertainty about the terms of such subrogation. It is provided for in the policy of insurance where Dodd expressly agreed, as one of the conditions of appellant's insuring him, that in the event of any payment made by appellant under the policy, Commercial Standard should be subrogated to all Dodd's rights of recovery therefor against any person or organization, and that the insured would execute and deliver instruments and papers and do whatever else was necessary to secure such rights.

No question arises in this case as to the total amount of liability under the various policies of the two insurance companies. It is conceded by appellee that the policy of appellant and the two policies of appellee covered the loss in question. The amount of that loss, represented by the judgment, which was paid by appellant, together with costs and interest, and the reasonable expense of defending the action for damages resulting in the judgment, are not disputed. Commercial Standard Insurance Company was obligated, by the terms of its insurance contract with Dodd, to defend the suit brought against him. It paid the resulting judgment according to its contract with the insured, with costs and interest, and pursuant to the written agreement for subrogation. It was not a volunteer in paying the entire loss pursuant to the agreement for subrogation. Because of the payment of the judgment and by virtue of subrogation to the rights of its insured, it is entitled to a judgment against appellee, American Employers Insurance Company, in the amount of the pro rata share for which American Employers is liable under its two policies of insurance, together with such pro rata share of the costs and interest paid in the damage action and the expense of the defense of such suit.

In accordance with the foregoing, the judgment is set aside, and the case remanded to the District Court for entry of judgment in accordance with this opinion.