**Bruce DODSON, as Attorneys in Fact for and on Behalf of the Subscribers at Casualty Reciprocal Exchange, Appellant,**

**v.**

**Ruth KEY et al., Appellees.**

Court of Appeals of Kentucky.

April 19, 1974.

Ben T. Cooper, Mayer, Cooper & Kiel, Louisville, for appellant.

Clarence Bartlett, Bartlett, McCarroll & Munley, Owensboro, for appellees.

PALMORE, Justice.

This case presents two liability insurance questions not heretofore decided by this court, which are:

1. An insurance company settles a tort claim against its insured, though it is uncertain whether the coverage of its policy applies. The policy contains a subrogation clause providing, "In the event of any payment under this policy, the company shall be subrogated to all the insured's rights against any person or organization," etc. Does the company have a cause of action against another insurer based upon the premise that its own policy was not applicable and the other insurer's policy was? We answer that question "yes."

2. An automobile liability insurance policy undertakes to pay on behalf of the insured all sums which he "shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person, caused by accident and arising out of the ownership, maintenance or use" of an automobile described in the policy. It defines the word "use" as follows: "Use of the automobile for the purposes stated includes the loading and unloading thereof." While using a truck covered by the policy, and for an authorized purpose thereunder, employes of the insured deliver a load of merchandise to a customer of the insured and negligently leave it stacked in a dangerous condition on the customer's front porch. As a result of this negligence the pile of merchandise falls over and injures the customer's daughter while she is attempting to move it on the day following the delivery. Is the insurer liable under the loading and unloading provision of the policy? Our answer to this question also is "yes."

On the morning of October 6, 1959, employes of the Webster County Lumber Company delivered a load of sheetrock to the home of Coleman Key in Providence, Kentucky, and stacked it edgewise against the wall on the porch. Some 24 hours later, when Mr. Key's daughter Ruth and her sister-in-law attempted to remove a sheet of the material, the entire stack fell over and injured Ruth. She brought suit against the lumber company on the theory that her injury had been caused by the negligence of its employes in stacking the sheetrock in such a manner that it was likely to fall over. She lost the suit in the trial court, but the judgment was reversed on a memorandum opinion by this court, following which the lumber company's public liability carrier, Casualty Reciprocal Exchange (represented by the appellant herein, Bruce Dodson, and for that reason hereinafter called Dodson), settled the claim for $4000.[1] Meanwhile it had brought this suit against Ohio Casualty Insurance Company, the appellant herein, joining Ruth Key and its insured, the lum-

---

1. Though not disclosed by the pleadings, the fact of the settlement was brought out in the arguments presented to the trial court, and presumably the case was practiced on the theory that the payment had been made. Cf. CR 15.02. Considering, however, the basic purposes of declaratory judgment, it is immaterial.

ber company, as parties defendant, for a declaratory judgment to the effect that Ohio Casualty's policy covered the claim. It now appeals from a judgment in favor of Ohio Casualty.

The public liability policy issued by Dodson excluded the lumber company's operations in the loading or unloading of automobiles. Ohio Casualty's automobile liability policy covered its liability for bodily injury and property damage "arising out of the ownership, maintenance or use of the automobile" including "the loading or unloading thereof." The policies were therefore mutually exclusive with respect to the particular liability involved in this case.

The trial court held that the accident causing Miss Key's injury did not arise out of the unloading of the vehicle and was not covered by Ohio Casualty's policy, by-passing the threshold questions of whether Dodson had a justiciable cause of action against Ohio Casualty and whether in settling the claim against the lumber company it was a "volunteer." Since we have reached a different conclusion, it is necessary to deal with the latter questions as well.

Ohio Casualty relies largely on Fidelity & Casualty Co. v. Martin, 163 Ky. 12, 173 S.W. 307 (1915), and upon the fundamental theory that one who is not party to a contract can have no rights under it.

The *Fidelity & Casualty* case involved an early form of automobile liability insurance under which the insurer undertook to "indemnify" the insured against loss from any liability imposed upon him by law for damages on account of death or bodily injuries caused by the use, ownership or maintenance of the covered automobile. "Loss" was defined in the policy as "a loss that the assured has actually sustained by the assured's payment in money . . . of a final judgment rendered after a trial in a suit against the assured," etc. After the insured party had had an automobile accident in which a pedestrian was injured,

the pedestrian recovered a verdict and judgment against him for $4500 but was unable to collect it and so brought suit against the insurance company. Under the terms of the policy and the classic theory of indemnity the court held that because the insured had not paid the judgment the insurance company was not liable. Such a result would not, of course, occur under a modern insurance policy similar to Ohio Casualty's contract with the lumber company.

"It is well settled, under both federal and state declaratory judgment acts, that the remedy of declaratory judgment is a proper one for the determination of questions arising from the construction and operation of insurance policies . . . the declaratory judgment action has been found to be a convenient method of determining controversies between insurance companies themselves, either by direct actions or by joinder or intervention, with respect to such questions as which of two or more insurers is liable under its particular policy and their respective liabilities and obligations." 22 Am.Jur.2d Declaratory Judgments § 40 (1965). "An insurer may obtain a declaratory judgment to determine the obligation of several insurers under their respective liability policies where there is a controversy as to which policy covers the accident." *Id.,* § 46. See also Henderson v. Selective Insurance Company (DC WD Ky., 1965), 242 F. Supp. 48, and Commercial Standard Ins. Co. v. American Emp. Ins. Co. (6 Cir. 1954), 209 F.2d 60, for discussion of the rights of an insurer by way of subrogation to those of the insured.

■ It is our opinion that Dodson clearly had standing to maintain this declaratory judgment action against Ohio Casualty.

■ Ordinarily one who discharges the debt of another without a legal or moral obligation to do so is considered a volunteer and will not be subrogated to the discharged debtor's rights against another.

See, for example (though we are not at all satisfied that it represents a sound application of the principle), Bonnie v. Maryland Casualty Co., 280 Ky. 568, 133 S.W.2d 904 (1939). In any event, it was held in Commercial Standard Ins. Co. v. Amer. Emp. Ins. Co. (6 Cir. 1954), 209 F.2d 60, that the "volunteer" theory does not apply to "conventional" subrogation, which is founded upon contract or agreement, as distinguished from "legal" subrogation, which is founded on equitable principles of restitution and unjust enrichment, and that payment by one insurer of more than it owed under its policy did not prevent recovery from another insurer which owed the excess.

■ Quite aside from the question (which we need not decide) of whether the "volunteer" principle applies at all to "conventional" subrogation, it is well settled that one who pays the debt of another is not a volunteer if in so doing he is acting to protect some interest of his own. Evans' Adm'r v. Evans, 304 Ky. 28, 199 S.W. 2d 734, 737 (1947).

"It would seem that one acting in good faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation, even though it turns out that he had no interest to protect." 50 Am.Jur. Subrogation § 23 (1944). And so, under a factual situation quite analogous to this, a district appellate court of California held in a well-reasoned opinion that an insurer which had paid part of a judgment its policy did not bind it to pay was entitled to recover from another insurer whose policy did cover the loss. Employers Mut. Liab. Ins. of Wis. v. Pacific Ind. Co., 167 Cal.App.2d 369, 334 P.2d 658 (1959). We find ourselves in agreement with the philosophy expressed by the following passage from that opinion:

"Equity would be performing a very poor function if by refusing under the circumstances of this case to consider plaintiff as the subrogee of Atkinson, it permitted defendant to escape its clear liability to Atkinson. Where, as here, a reasonable doubt exists as to his own liability to a third party, a person making a payment to that party which should have been made by a second party, cannot as to such payment be considered a volunteer or interloper." 334 P.2d at p. 664.

■ Hence it is our opinion that in making a good-faith settlement of the claim against the lumber company under circumstances in which it had reasonable cause to believe it might be held liable, Dodson was not a volunteer.

There has been a great deal of litigation throughout the country over the scope of the standard clause in automobile liability insurance policies defining "use" as including the "loading and unloading" of the insured vehicle. Strangely, it seems not to have come up in this court until now. Many courts have chosen between the conservative "coming to rest" theory and the more liberal "complete operation" doctrine. For comprehensive discussions and compilations of authority, see Couch on Insurance 2d, § 45–123 et seq. (1964); Appleman, Insurance Law and Practice, § 4322 et seq. (1962), and Supplement (1972); Annotation, Risks within "loading and unloading" clause of motor vehicle liability insurance policy, 95 A.L.R.2d 1122 (1964), supplementing an earlier annotation at 160 A.L.R. 1259; and 7 Am.Jur.2d Automobile Insurance § 87 et seq. (1963), and Cumulative Supplement (1973).

The necessity of choosing between these two viewpoints, or some variation of one or the other, originates in the premise that the *accident* must have occurred *during* what is determined to be the process of loading or unloading. Cf. 7 Am.Jur.2d Automobile Insurance § 88. That may be a valid premise if the phraseology of the contract can be reasonably construed as providing coverage only for accidents that happen during the time or times the vehi-

cle is being used, but when the policy specifically covers accidents "arising out of" its use, as Ohio Casualty's policy in this case does, it seems clear to us that it is the *causative negligence,* rather than the injurious consequences, that must occur in the use of the insured vehicle.

 Even under the "coming to rest" doctrine the act of stacking the materials on the customer's porch was a part of the process of unloading the truck. That was the negligent act which caused the injury. By any logic, the injury therefore arose out of the unloading of the vehicle and was covered by Ohio Casualty's policy.

"In the case at bar, the injury was allegedly caused by the negligent placing of the parcel. The cases seem to agree that the process of unloading includes at least the entire operation during which the article is lifted and removed from the vehicle up to the moment when the article has actually come to a place of rest outside the vehicle and the connection of the vehicle with the process of unloading has ceased. In the case at bar, we think unloading began, when the insured lifted the parcel from the truck, and ended when insured placed the parcel in front of plaintiff's door. The causative negligence charged is negligence which occurred during the unloading of the truck  .  .  .  . By the instant policy, insurer agreed to pay on behalf of insured sums which insured shall become legally obligated to pay because of bodily injury 'arising out of' the use, including unloading, of the truck  .  .  .  . The instant policy does not require that the injury occur during or in the course of the unloading. The insurer did not so limit its liability  .  .  .  . Plaintiff's injury here allegedly resulted from negligent placing of the package. The placing of the package was part of the unloading. We are of opinion that the injury thus allegedly arose out of the unloading, and that, because the policy covered injuries arising out of the unloading, the policy covered insured's liability to pay for the injury here." Pacific Indemni-

ty Company v. Run-A-Ford Company, Ala., 276 Ala. 311, 161 So.2d 789, 791–792 (1964).

The judgment is reversed for further proceedings consistent with this opinion.

All concur.