978 F.2d 1259
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee,
v.
CALVERT INSURANCE COMPANY, Defendant-Appellant.
 No. 91-6403.
 United States Court of Appeals, Sixth Circuit.
 Oct. 23, 1992.
 
 Before RALPH B. GUY, Jr., DAVID A. NELSON and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 This case involves two insurance companies that issued policies to the Board of Education of Wayne County, Kentucky. We are asked to decide whether liability and defense costs arising from litigation and settlement of claims following a school bus accident are apportionable between the insurers pursuant to pro rata "other insurance" clauses in the policies and, if so, to determine the proper allocation of these expenses. For the reasons stated below, we shall affirm in part, and reverse in part, the judgment of the district court and remand for further proceedings.
 
 I.
 
 2
 The Board of Education of Wayne County, Kentucky, owned a 1971 Chevrolet van, which it had converted for use as a school bus. On September 1, 1982, Board employee Clay Hicks was driving the bus when it collided with an automobile operated by Donna Shepherd, whose car had apparently skidded on wet pavement. This accident claimed the life of one child, Eva Jewell Blevins, and caused injuries to students Tim Blevins and April Dishman, and to a school lunchroom matron, Wanda Pyles. The student seating area in the bus was constructed of planks or boards along the sides and back of the vehicle in a "U" or horseshoe shape, covered with carpeting. There were no chair-like seats or restraining devices of any sort.
 
 
 3
 Lawsuits were filed against the Board, Hicks, and Shepherd for injuries sustained in the bus accident. In their complaints, the injured parties asserted claims of negligence by Hicks and Shepherd in the operation of the vehicles; product liability based on the design, manufacture, construction and assembly of the van by the Board for use as a school bus; and negligence by the Board in the use of the bus to transport passengers.
 
 
 4
 As of September 1, 1982, the Board had insurance coverage under policies issued by both plaintiff State Farm Mutual Automobile Insurance Company and defendant Calvert Insurance Company. The State Farm policy was a standard auto liability policy in which the company agreed to pay damages "caused by accident resulting from the ownership, maintenance or use of your car...." The State Farm policy provided "split limits" coverage of $1 million per accident and $100,000 per person. The Calvert policy was a general liability policy in which Calvert agreed to pay for all damages "caused by an occurrence" provided, however, that the policy excluded "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft, automobile or watercraft owned, operated, or hired by or for the insured." The Calvert policy limits were $1 million per occurrence and in aggregate, with no "per person" limitation. Each policy contained an "other insurance" clause providing for pro rata allocation of liability if more than one policy covered the insured's loss.
 
 
 5
 State Farm settled a claim by the parents of April Dishman for $12,500, and defended claims against the Board and Hicks, the bus driver, filed by the estate of Eva Blevins, her parents individually, and Tim Blevins, and by Wanda Pyles and her husband. Calvert refused to defend, claiming that the injuries arising from the bus accident were not covered by its policy with the Board. In addition to the defense supplied by State Farm, the Board also hired separate counsel to defend claims based on its own actions and alleged negligence.
 
 
 6
 Prior to trial in the Blevinses' case, the product liability claims against the Board were dismissed on the Board's motion for summary judgment. A jury later returned a verdict finding the Board 70% negligent for the injuries caused in the bus accident; Shepherd, who had already settled with all plaintiffs, 30% negligent; and Hicks not negligent.
 
 
 7
 State Farm also filed a separate declaratory judgment action in the Kentucky courts seeking to determine the coverage of the various policies held by the Board. State Farm asserted that its policy covered only the negligence of the bus driver and did not extend to claims of negligent acts by the Board members. Calvert denied any duty to defend or indemnify based on the policy exclusion for bodily injury arising out of the maintenance, operation, or use of an automobile. The trial court held that the State Farm policy covered both the driver's negligence and the Board's and that the Calvert policy did not provide coverage, but that Calvert nevertheless had a duty to defend the Board.[1]
 
 
 8
 A multitude of appeals were taken to the Kentucky Court of Appeals and the damage actions and declaratory judgment suit were consolidated on appeal.
 
 
 9
 Prior to a decision by the Kentucky Court of Appeals, however, State Farm entered into a partial settlement with the remaining plaintiffs, paying $120,664.74 to the Blevinses and $27,060.18 to Wanda and Clyde Pyles.
 
 
 10
 The Kentucky Court of Appeals' decision vacated the jury verdict in favor of the Blevinses and ordered a new trial based on denials of the Blevinses' motions for recusal and change of venue. It also affirmed the trial court's dismissal of plaintiffs' product liability and punitive damages claims against the Board as a matter of law, affirmed the trial court's determination that the State Farm policy covered both the bus driver's negligence in operating the bus and "the Board's negligence in outfitting a vehicle," and held that the exclusion in the Calvert policy "d[id] not preclude coverage for negligence of the Board or its officials for negligence affecting a policy decision resulting in an unsafe mode of transportation for school children."
 
 
 11
 The tort claims were never retried. Rather, in light of the decision of the Court of Appeals that the Calvert policy afforded coverage to the Board, Calvert also settled with the Blevinses for $115,000, and reimbursed the Board for $57,617.91 in defense costs incurred by the Board as a result of Calvert's refusal to defend.
 
 
 12
 State Farm brought this action to collect its expenses from Calvert, including $58,647.35 incurred in defending claims against the Board and Hicks, claiming that the Calvert policy supplied primary coverage and that Calvert was therefore solely liable for all settlement payments, defense costs, and interest up to the limits of its policy coverage. Alternatively, State Farm sought an apportionment of expenses under the pro rata "other insurance" clauses contained in the State Farm and Calvert policies. Calvert argued that it insured different risks than State Farm and, because State Farm settled before liability of the companies could be properly determined by a jury on retrial, State Farm should be liable for all settlement and defense costs it incurred in "buying its peace" with plaintiffs.
 
 
 13
 The district court decided, on cross-motions for summary judgment, in favor of State Farm:
 
 
 14
 The Kentucky Court of Appeals settled the question of whether there was coverage. The Court stated that a liberal interpretation of the policies establishes that both State Farm and Calvert have policies which cover the injuries incurred.... Therefore, the only issue remaining is the amount of liability of each insurer.
 
 
 15
 The mere fact that State Farm volunteered to defend and eventually settled the case does not preclude it from recovering its pro rata share of the judgment and expenses from Calvert. Commercial Standard Ins. Co. v. American Emp. Ins. Co., 209 F.2d 60, 66 (6th Cir.1954). "Where the loss of an insured is covered by several policies in different insurance companies, it is unimportant whether the coverage is specific in one policy and general in another, if the policies contain pro rata clauses providing that the liability under each policy shall be only that proportion of the total loss which the policy bears to the total amount of the policy. Id. at 63....
 
 
 16
 State Farm provided $100,000.00 coverage per person and $1,000,000.00 per accident. Calvert provided $1,000,000.00 coverage. Therefore, the Court will allocate the liability pro rata which will be 1/11 for State Farm per person and 10/11 per person for Calvert. State Farm should submit an itemized statement of the costs and expenses paid and to whom they were paid.
 
 
 17
 Based on figures supplied by State Farm, the district court ordered Calvert to pay $279,652.10, ten-elevenths ( 10/11) of all settlement and defense costs incurred by State Farm, plus ten-elevenths ( 10/11) of all accrued interest on the payments.
 
 
 18
 Calvert appeals the summary judgment granted in favor of State Farm and the district court's allocation to Calvert of ten-elevenths of all settlement and defense expenses incurred by State Farm.
 
 II.
 
 19
 A district court's order granting summary judgment is reviewed de novo. Leila Hosp. & Health Ctr. v. Xonics Medical Sys., Inc., 948 F.2d 271, 274 (6th Cir.1991).
 
 III.
 
 20
 In challenging the apportionment of indemnity, Calvert first assigns error to the district court's interpretation of Commercial Standard Ins. Co. v. American Employers Ins. Co., 209 F.2d 60 (6th Cir.1954). Calvert asserts that because it would not have been liable for any losses attributable to the bus driver's negligence, it cannot be a coinsurer with State Farm. Calvert further claims that because State Farm decided to settle all claims prior to retrial, thus precluding the possibility of accurately apportioning comparative negligence and the liability of the companies under their respective policies, Calvert should not be held liable for any portion of State Farm's settlement payments. We disagree and hold that indemnity costs may properly be apportioned between State Farm and Calvert.
 
 
 21
 There is no dispute about the validity of pro rata clauses in insurance policies or their binding effect under Kentucky law where two or more insurers cover the same interest. See Calvert Fire Ins. Co. v. Stafford, 437 S.W.2d 176, 179 (Ky.Ct.App.1969). Our task in apportioning liability under the pro rata clauses is made difficult in this case, however, by the dissimilar risks insured by State Farm and Calvert and our inability to know how a trier of fact might have finally apportioned negligence and causation among the potentially negligent parties (the Board, Hicks, and Shepherd) had this case been resubmitted to a jury following a new trial. Under the decision of the Kentucky Court of Appeals, State Farm was held to have covered injuries resulting from the alleged negligence of Hicks in operating the school bus as well as from the alleged negligence of the Board "in outfitting [the] vehicle." Calvert was held to have covered injuries caused by "the negligence of the Board or its officials for negligence affecting a policy decision resulting in an unsafe mode of transportation for school children." Yet we have no guidance as to how a trier of fact on retrial would have assigned negligence between the Board and the bus driver.
 
 
 22
 We agree with Calvert that it may not be forced to insure the risk of negligence in the operation of the school bus, a risk specifically excluded by its policy with the Wayne County Board of Education. We believe, however, that under the facts of this case, the district court did not err in apportioning liability among the insurers, and that Calvert, which refused to provide a defense to the Board at the time of trial and through appeal to the Kentucky Court of Appeals, shall not now be permitted to complain of State Farm's settlements of the claims against the Board. Cf. Pacific Indemnity Co. v. Linn, 590 F.Supp. 643, 651 n. 8 (E.D.Penn.1984), aff'd, 766 F.2d 754 (3d Cir.1985).
 
 
 23
 Calvert next claims that the indemnity costs, if subject to proration, should at least include Calvert's $115,000 in settlement payments made after the decision of the Kentucky Court of Appeals finding that the Calvert policy covered the Board's alleged negligence. We agree and hold that the district court erred in failing to include all payments made by the insurers prior to apportioning liability under the pro rata clauses. Both State Farm and Calvert made payments in settlement of claims asserted against the Board. We have been provided no authority to justify the exclusion of any of the various settlements from the calculation of the respective liability of the insurers; nor can we think of any reason to do so. The total liability to be apportioned between State Farm and Calvert should include the $12,500 paid to the parents of April Dishman, the $27,060.18 paid to Wanda and Clyde Pyles, the $120,664.74 paid by State Farm to the Blevinses, and the $115,000 paid by Calvert to the Blevinses. These are the losses incurred as the result of the bus accident and, for reasons stated already, these losses should be shared by State Farm and Calvert on a pro rata basis.
 
 
 24
 Next, Calvert asserts that the district court misapplied the pro rata provisions of the policy contracts and that its proper share should be ten-fourteenths ( 10/14), not ten-elevenths ( 10/11) of the losses incurred as the result of the bus accident. The district court stated:
 
 
 25
 State Farm provided $100,000.00 coverage per person and $1,000,000.00 per accident. Calvert provided $1,000,000.00 coverage. Therefore, the Court will allocate the liability pro rata which will be 1/11 for State Farm per person and 10/11 per person for Calvert.
 
 
 26
 Calvert asserts that because there were four accident victims--Eva Jewell Blevins, Tim Blevins, April Dishman, and Wanda Pyles--the total valid and collectible insurance available to the Board was $1.4 million, not $1.1 million, and because Calvert provided $1 million and State Farm $400,000 in coverage, it should therefore be apportioned no more than the ten-fourteenths ( 10/14) fraction of liability it covered relative to the total coverage available to the Board.
 
 
 27
 We think the appropriate focus in this case, where the number of victims and the nature of their injuries were known prior to any settlement by either insurer, is the total insurance available to cover the "accident" or the total "loss" involved, not the smaller amount available to cover individual claims against the Board. State Farm's policy with the Board states that the insurer may be held liable only for "the per cent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident." The Calvert policy similarly provides that Calvert shall not be liable "for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss." We agree with Calvert that the total available insurance for purposes of apportioning liability should be $1.4 million[2] and the appropriate proration of the $275,224.92 in losses caused by the bus accident is ten-fourteenths ( 10/14) to Calvert and four-fourteenths ( 4/14) to State Farm.
 
 
 28
 Finally, we conclude that, due to the somewhat peculiar facts presented in this case, the legal fees and other defense costs incurred by both State Farm and Calvert, unlike indemnity, should be left as they stand, without apportionment between the insurers. Under Kentucky law, an insurer has a duty to defend if there is "any allegation which potentially, possibly or might come within the coverage of the policy." James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co., 814 S.W.2d 273, 279 (Ky.1991). The duty to defend is "separate and distinct from the obligation to pay any claim," and continues "to the point of establishing that liability upon which the plaintiff was relying was in fact not covered by the policy and not merely that it might not be." Id. In this case, there is no dispute that Calvert paid the Board all defense costs incurred as the result of Calvert's refusal to defend once the issue was determined against Calvert by the Kentucky Court of Appeals. We think that by promptly settling its dispute with the Board, and paying over $57,000 in fees and costs incurred by the Board in defending claims, Calvert fulfilled its duty to defend. We are also unable to ascertain the precise portion of State Farm's defense costs attributable to the defense of Clay Hicks, the bus driver, whose allegedly negligent operation of the school bus was a risk not covered by Calvert, but by State Farm alone. Under these circumstances, we are satisfied that each insurer, having met its duty to the Board, should bear its own defense costs.[3]
 
 IV.
 
 29
 To summarize, we AFFIRM the decision of the district court to apportion liability arising from the school bus accident between State Farm and Calvert. We have determined, however, that the liability to be apportioned between the insurers should include all settlement payments made by the insurers, not just those made by State Farm. We have also decided that the insurers' defense costs are not to be prorated but should be borne by the insurers individually. Finally, we disagree with the district court's determination of the insurers' respective pro rata shares and hold that the proper apportionment of the total liability should be ten-fourteenths ( 10/14) to Calvert and four-fourteenths ( 4/14) to State Farm. We therefore REVERSE that portion of the district court's judgment establishing the amount of liability to be apportioned and the pro rata share to be attributed to each insurer, and REMAND this case for further proceedings consistent with this opinion.
 
 
 30
 DAVID A. NELSON, Circuit Judge, concurring in part and dissenting in part. I concur in most of the court's opinion, but dissent from one element of it.
 
 
 31
 It is true, as the court says, that we do not know how a trier of fact would have assigned negligence between the Board and bus driver if the Blevins' case had been retried in Kentucky. The Calvert policy contained an exclusion for loss occasioned by the negligence of the bus driver, however, and I do not think we are justified in reading that exclusion out of the policy. In this case, as in Cincinnati Ins. Co. v. Vance, 730 S.W.2d 521, 524 (Ky.1987), "the coverage question will turn on the true facts as judicially determined...."
 
 
 32
 The district court is fully capable of determining what part of the loss, if any, was attributable to conduct as to which State Farm was the sole insurer. I would instruct the district court to make such a determination on remand and to enter judgment against Calvert for ten-fourteenths of portion of the loss as to which both Calvert and State Farm provided coverage.
 
 
 
 [1]
 The Board also held an errors and omissions policy issued by the CNA Insurance Company. The Kentucky courts determined that the CNA policy did not cover the injuries sustained in the bus accident and it is not, therefore, relevant to the issues raised in this appeal
 
 
 [2]
 Under Kentucky law, "per person" dollar limitations in insurance policies are to be applied to all claims for damages arising out of a single personal injury, whether the claim is made by the person who suffered the physical injury or by another. See Moore v. State Farm Mut. Ins. Co., 710 S.W.2d 225, 226 (Ky.1986)
 
 
 [3]
 We recognize that in Commercial Standard this court apportioned both indemnity and defense costs pro rata among coinsurers. 209 F.2d at 66. In this case, however, we are not confronted with an insurer that has shirked its duties to the insured and seeks to have another fulfill them, but with two insurers that have willingly met their obligations to the insured when those obligations became apparent