**KENTUCKY HOSPITAL ASSOCIATION TRUST, Appellant,**

v.

**CHICAGO INSURANCE COMPANY, Appellee.**

No. 97-CA-0778-MR.

Court of Appeals of Kentucky.

July 2, 1998.

Case Ordered Published by Supreme Court Nov. 12, 1998.

Mark G. Arnzen, Beverly R. Storm, Covington, Kentucky, for Appellant.

Robert M. Connolly, Rebecca F. Schupbach, Louisville, Kentucky, for Appellee.

Before GUDGEL, Chief Judge, GARDNER and SCHRODER, Judges.

*OPINION*

GARDNER, Judge.

Kentucky Hospital Association Trust (KHAT) appeals from an opinion and order of the Jefferson Circuit Court granting summary judgment for the appellee, Chicago Insurance Company (CIC). KHAT and CIC both insured Duncan Asher (Asher), a pharmacist at Pineville Community Hospital (Pineville). In this action, KHAT sought subrogation from CIC as a result of a settlement reached with the plaintiffs in a prior negligence action. After reviewing the record below, this Court affirms the circuit court's decision to grant a summary judgment.

Rita North (North) was a patient at Pineville. She was admitted to Pineville in March 1991, suffering from severe acute pancreatitis. Dr. Talmadge Hays (Hays) cared for North when she was admitted. Hays consulted with another doctor, Dr. Jerry Woolum (Woolum) who allegedly recommended using the drug, methotrexate, to

treat North's pancreatitis. Woolum recommended North be administered 100 milligrams of methotrexate daily for a three day period. Hays ordered the drug given to North at the dosage recommended by Woolum. Asher, Pineville's pharmacist, was unable to procure the drug until the next day. He apparently telephoned the University of Kentucky with questions regarding methotrexate and its dosage, but ultimately the drug was administered to North. As a result of the administration of the methotrexate, North developed a massive infection. Her condition continued to worsen, and she was ultimately transferred to the University of Tennessee Hospital in Knoxville. She was discharged finally in September 1991. She incurred medical expenses exceeding $800,-000.

In February 1992, North filed a malpractice action against Woolum, Hays, and Pineville. Although Asher was apparently listed on a draft complaint, he was never named as a defendant by North. KHAT ultimately settled with North on behalf of Pineville. In January 1994, an agreed order of dismissal was entered. KHAT subsequently demanded indemnification from CIC based on CIC's insurance policy covering Asher. CIC rejected KHAT's demand.

In June 1994, KHAT filed a complaint against CIC in circuit court. KHAT maintains that based upon the two policies that covered Asher, CIC should contribute fifty percent to the cost of defense and the amount of indemnity based on North's claims. CIC moved for summary judgment. In an opinion and order of February 28, 1997, the circuit court granted CIC's motion for summary judgment. The court concluded that CIC was not obligated to pay under its contract of insurance with Asher, because Asher had never been found liable. Thus, it held no direct action may be maintained against CIC. KHAT subsequently brought this appeal.

■ KHAT argues on appeal that the circuit court misconstrued its claim and erred as a matter of law in granting a summary judgment for CIC. It contends that the doctrine of equitable subrogation applies to this case. After reviewing KHAT's arguments and the applicable law, this Court concludes that the circuit court correctly ruled for CIC.

■ KHAT relies heavily in this case on Restatement of Restitution § 162 (1937) which states,

> Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefits thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder.

Generally, equitable estoppel is applied to transactions where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he or she acquiesced or accepted benefit. *Tarter v. Turpin,* Ky., 291 S.W.2d 547, 549 (1956). *See Electric & Water Plant Board of the City of Frankfort v. Suburban Acres Development, Inc.,* Ky., 513 S.W.2d 489 (1974) (setting out the essential elements of equitable estoppel). There are two kinds of subrogation—legal, also known as equitable, and conventional. *Commercial Standard Ins. Co. v. American Employers Ins. Co.,* 209 F.2d 60, 64 (6th Cir.1954). Legal/equitable subrogation arises by operation of law; conventional subrogation arises by contract or agreement. *Id.* In equity, a court may give restitution to a plaintiff to prevent the unjust enrichment of the defendant where the plaintiff has used its property in discharging an obligation. *Id.* The doctrine of subrogation includes every instance in which one person not acting voluntarily, has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter. *Liberty Mut. Ins. Co. v. General Ins. Corp.,* 517 S.W.2d 791, 797 (Tex.Civ. App.1974) (citations omitted). *See also North East Ins. Co. v. Concord General Mut. Ins. Co.,* 433 A.2d 715 (Me.1981).

■ In Kentucky it has long been held that generally suits against insurance carriers cannot be maintained until after a judgment fixing liability against their insured has been entered. *Moores v. Fayette County,* Ky., 418 S.W.2d 412 (1967); *Happy v. Erwin,* Ky., 330 S.W.2d 412 (1959), overruled in part

by *Fireman's Fund Ins. Co. v. Government Employees Ins. Co.,* Ky., 635 S.W.2d 475 (1982); *Chambers v. Ideal Pure Milk Co.,* Ky., 245 S.W.2d 589 (1952). *Cf. Bass v. Williams,* Ky.App., 839 S.W.2d 559 (1992). An insured must become legally obligated to pay pursuant to terms of the insurance contract. *Moores v. Fayette County,* 418 S.W.2d at 413.

In the case at bar, KHAT's claim of equitable subrogation is simply misplaced. CIC's insured, Asher, was never named as a party in North's lawsuit nor was he part of the settlement reached between KHAT and North. Therefore, CIC had no legal obligation as to Asher. There was no finding that Asher was liable to North as a result of Asher's actions or inactions. Under Asher's policy with CIC, CIC was to pay on behalf of Asher regarding professional liability, "all sums which the insured shall become legally obligated to pay as damages because of injury...." No such legal obligation ever arose on Asher's part in this case as he was never named in the suit, and the statute of limitations ran as to claims against him. Further, we have found no actions or representations by CIC which would have caused KHAT detrimental reliance. A letter from CIC's representative states that CIC will not join in any mediation, because CIC had uncovered no liability on Asher's part. The out of state cases cited by KHAT are distinguishable, because in those cases there were judgments finding the insureds liable or the insureds were named as parties and were included in the settlements. Summary judgment was appropriate in the case at bar, because there were no factual issues, and as a matter of law, CIC was entitled to prevail. *See Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476 (1991).

For the foregoing reasons, this Court affirms the judgment of the Jefferson Circuit Court.

GUDGEL, Chief Judge, concurs.

SCHRODER, Judge, dissents.

SCHRODER, Judge, Dissenting.

I believe summary judgment was premature. KHAT should have been given the opportunity to prove equitable reliance. However, the real loser is Rita North, not KHAT. Rita North settled for less than actual damages because she felt sorry for Duncan Asher and she was represented by an attorney who didn't ask if Asher had his own policy. If the attorney had asked, KHAT would still have paid close to the policy limits and CIC would have made a significant contribution to the settlement.