THE STANDARD FIRE INSURANCE
COMPANY, Appellant

v.

EMPIRE FIRE AND MARINE
INSURANCE COMPANY,
Appellee.

No. 2006–CA–000698–MR.

Court of Appeals of Kentucky.

Aug. 31, 2007.

W. David Kiser, Simon Berry, Louisville, KY, for Appellant.

Edward H. "Ted" Bartenstein, Louisville, KY, for Appellee.

Before DIXON, HOWARD and THOMPSON, Judges.

## OPINION

HOWARD, Judge.

The Standard Fire Insurance Company (hereinafter Standard) appeals from a summary judgment of the Jefferson Circuit Court, in which Standard was ordered to indemnify Empire Fire and Marine Insurance Company (hereinafter Empire) in the amount of $19,870.44, plus attorney fees and costs incurred in the settlement of third-party personal injury claims arising from an automobile accident. Finding no error, we affirm.

The basic facts in this case are not in dispute. Standard issued an insurance policy to William and Amy Kaelin (hereinafter the Kaelins) on a 1999 Honda Accord, which the Kaelins had leased from Wells Fargo. Empire issued a garage policy to Imperial Recovery Company (hereinafter Imperial), which provided coverage for any "non-owned autos used in your garage business," which business included the repossession of automobiles.

Subsequently, the Kaelins defaulted on their lease payments to Wells Fargo. After the default, Wells Fargo employed Imperial to repossess the Honda from the Kaelins' residence. Imperial sent an agent, George Richardson (hereinafter Richardson), with express instructions to retrieve the Honda. The Kaelins accommodated Richardson by handing over the keys. Although he had brought a flatbed truck to transport the Honda, having been given the keys, Richardson drove it from the Kaelin residence. Unfortunately, on his way back to the Imperial lot, he was involved in a two-vehicle collision which all parties concede was due to his negligence. Both insurance policies, that issued by Standard to the Kaelins and that issued by Empire to Imperial, remained in full force and effect on the date of the accident.

As a result of this accident, Empire settled personal injury claims with three third parties, who were passengers in the other automobile involved in the accident. Empire then filed a complaint against Standard seeking reimbursement, alleging that Standard had the primary liability coverage applicable to Richardson at the time of the accident and should have paid the settlement claims under its policy. Both parties filed motions for summary judgment. The Jefferson Circuit Court entered a summary judgment in favor of Empire on December 20, 2005, simultaneously overruling Standard's motion. The circuit court found that the provisions of the insurance policies made Standard the primary insurer, and therefore that Empire was entitled to indemnity from Standard. This appeal followed.

In evaluating this case, we must address three separate issues. First, did Standard's policy provide coverage to Richard-

son for this accident? Second, did Empire's policy provide such coverage? Third, if both policies apply, which policy is primary? In deciding such issues, we will look to the language of the policies. *State Farm Mutual Automobile Ins. Co. v. Register,* 583 S.W.2d 705 (Ky.App.1979).

■ Standard's insurance policy specifically listed the 1999 Honda involved in this accident as the insured vehicle. Standard's argument that its coverage does not apply in this situation is based on an exclusion in the policy which states:

We do not provide Liability Coverages for any person: ...

Using a vehicle without a reasonable belief that that person is entitled to do so.

The problem with this argument is that Richardson clearly had "a reasonable belief" that he was entitled to drive the Honda. In fact, he had express or clearly implied permission from both Imperial and the Kaelins. Imperial had given him clear instructions to repossess the automobile, and there is no evidence that he varied from his instructions by driving the vehicle instead of transporting it on the truck. Once he arrived at the Kaelin residence, they gave him the keys.

While we can find no Kentucky cases directly on point, most jurisdictions that have construed such "reasonable belief" clauses have held that while reasonable belief and permission are not the same thing, actual or apparent permission is a crucial factor in determining whether a reasonable belief exists. *Ohio Casualty Ins. Co. v. Safeco Ins. Co.,* 768 S.W.2d 602, 603 (Mo.App.1989). In this case, the Kaelins gave Richardson permission to drive the car by handing him the keys. This was more than sufficient to create in his mind a reasonable belief that he was entitled to do so.

Standard has argued that the Kaelins no longer had authority to give permission for Richardson to drive the vehicle, as they had defaulted on their lease with Wells Fargo, and it was being repossessed from them. We disagree and believe they had at least *apparent* authority, so as to create in his mind a reasonable belief that he was entitled to operate the vehicle. Regardless, if the Kaelins did not have such authority, it would surely have resided with Imperial, as the agent for Wells Fargo, and Imperial expressly requested Richardson to repossess the Honda.

We therefore hold that Richardson had a "reasonable belief" that he was entitled to drive the 1999 Honda and that Standard's insurance policy did apply and provided liability coverage to Richardson at the time of this accident.

Empire admits that its policy provided coverage for this accident. Such coverage is the reason Empire paid the settlement claims in the first place. Therefore, both the Standard and the Empire policies apply in this case. The next issue is which policy is primary and therefore ultimately responsible for the claims brought by the injured parties.

■ Standard has based a good deal of its argument on public policy, explaining why, in its view, it would be more fair and better policy to impose the burden of coverage on Empire, as Imperial's insurer, than on Standard, as the Kaelins' carrier. But Kentucky law is well established that, "[w]hen the contest is between two insurers, the liability for a loss should be determined by the terms and provisions of the respective policies ..." *Chicago Ins. Co. v. Travelers Ins. Co.,* 967 S.W.2d 35, 37 (Ky. App.1997) (quoting *State Farm Mutual Automobile Ins. Co. v. Register, supra.,* at 706–707.) "Furthermore, where the terms of an insurance policy are clear and unambiguous, the policy should be enforced as

written." *Chicago Ins. Co., supra,* at 37. Thus, this Court will look to the strict language of the insurance policies in determining which coverage is primary, rather than to public policy.

■ As noted above, Standard's policy specifically listed the Honda as an insured vehicle. It also contained an "other insurance" clause. That clause provided,

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

Empire's insurance policy also contained an "other insurance" clause, which provided,

> For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

Thus, both policies state that their coverage is excess for any non-owned vehicle. Standard has accordingly argued that the Kaelins should not be considered the owners of the 1999 Honda. They acknowledge that KRS 186.010(7)(b) makes a lessee of a vehicle the "owner" for insurance purposes, if "[the] vehicle is the subject of an agreement for ... lease, with the ... lessee entitled to possession of the vehicle, upon performance of the contract terms, for a period of three hundred sixty-five (365) days or more ..." However, they argue that the Kaelins' entitlement to possession ended immediately upon their de-

fault, and that they were therefore no longer the owners. Standard cites no authority for so narrow a reading of KRS 186.010(7)(b), and we see no reason to adopt such an interpretation. According to the lease agreement, the Kaelins could have cured the default and the lease would have remained in effect.

We agree that once the Honda was repossessed, the Kaelins had a right to cancel their insurance and to consider themselves no longer responsible for the safe operation of the vehicle, which was no longer in their possession or control. In fact, they did cancel the insurance, apparently without any knowledge of this accident, a few days later. However, the coverage was clearly issued by Standard on an "owned" vehicle, *this* vehicle. That coverage had not yet been canceled by the Kaelins when this accident occurred.[1] Neither had the lease formally been canceled. So long as both the lease agreement and the Kaelin's insurance policy, issued on this specific 1999 Honda, remained in effect, we hold that such insurance policy provided coverage, for this Honda, as an *owned* rather than a non-owned vehicle.

■ As to owned vehicles, Standard's "other insurance" clause is a "pro rata" clause. Kentucky law is well settled that when a policy containing a pro rata "other insurance" clause conflicts with a policy having an excess "other insurance" clause, the policy with the pro rata provision should be applied first and the policy with the excess clause would become effective only when the first policy is exhausted. *Hartford Ins. Co. v. Kentucky Farm Bureau Ins. Co.,* 766 S.W.2d 75 (Ky.App. 1989).

---

1. We also note that Standard has not alleged that it canceled the policy or refunded any portion of the Kaelins' premium to them, representing the period of time between either their default under the terms of the lease or the repossession of the vehicle and the date that the Kaelins canceled the policy.

We therefore hold that, pursuant to the terms of the two insurance policies, Standard's policy provides the primary liability insurance for this accident and Empire's policy provides only excess coverage. Therefore, Empire is entitled to reimbursement from Standard for the sums it paid on behalf of its insured to the injured parties.

"The doctrine of subrogation includes every instance in which one person not acting voluntarily, has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter." *Kentucky Hosp. Ass'n. Trust v. Chicago Ins. Co.*, 978 S.W.2d 754, 755 (Ky.App.1998). More specifically on point with this case, the court in *Dodson v. Key*, 508 S.W.2d 586 (Ky.1974), held that an insurance company which pays to settle claims that were asserted against one of its insureds may bring an action to recover the amounts paid from another insurer that should, in fact, have made those payments. "It is well settled that one who pays the debt of another is not a volunteer if in so doing he is acting to protect some interest of his own." *Dodson*, 508 S.W.2d at 589.

Empire acted in good faith in settlement of the personal injury claims with a reasonable belief of possible liability on its part. In fact, Standard had the primary liability coverage and the primary responsibility to defend and settle those claims. Therefore, Empire is entitled to reimbursement from Standard for the amount of its settlement of those claims, as well as its costs and fees incurred.

The summary judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.